## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>PAUL L. PARSHALL, d/b/a SPORTS BEER BREWING COMPANY<br><br>Defendant. | Case No. _____<br><br>Jury Trial Demanded |

## **COMPLAINT**

Plaintiff The Pennsylvania State University ("Penn State"), by counsel, hereby alleges as follows for its Complaint against Defendant Paul L. Parshall, doing business as Sports Beer Brewing Company ("Defendant" or "Parshall"):

### **Introduction**

1.      This is an action for trademark infringement, unfair competition, and trademark dilution under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, trademark infringement under Pennsylvania law, unfair competition under Pennsylvania common law, and cancellation of Defendant's unlawful state trademark registrations.

2.      Defendant is engaged in a brazen, willful effort to exploit and trade on the fame and goodwill associated with Penn State's rights in the famous PENN

STATE and NITTANY LIONS trademarks. Penn State uses those Marks to promote a variety of goods and services associated with the University. Defendant began willfully infringing on those Marks (as well as marks belonging to *many* other colleges, universities, and professional sports teams) to blatantly trade off of Penn State's goodwill and reputation.

3. Similar to a cybersquatter, Defendant's business model appears to be to secretly register famous marks with state departments, which do not undertake trademark searches for conflicts and which approve such registrations automatically. Defendant then attempts to license those famous marks as his own, regardless of the law. In fact, when Penn State contacted Defendant about his infringement of the famous Penn State Marks, Defendant wanted a buy out: to sell Penn State's own Marks back to Penn State. Faced with Defendant's serial infringement, including of Penn State's Marks, Penn State brings this action to stop the damage caused by Defendant's willful conduct.

## The Parties

4. Plaintiff is The Pennsylvania State University, a not-for-profit, State-related institution of higher education, created under the statutory authority of the Commonwealth of Pennsylvania, and which operates as an instrumentality thereof. Penn State maintains a place of business at 208 Old Main, University Park, Centre County, Pennsylvania, 16802.

5.     Upon information and belief, Defendant Paul L. Parshall is an individual residing in the State of Florida at 2031 Imperial Golf Course Blvd, Naples, Florida 34110, who conducts business under the tradename "Sports Beer Brewing Company."

## Jurisdiction and Venue

6.     This Court has original jurisdiction over this Complaint for infringement of trademark, unfair competition, false advertising, and trademark dilution involving a famous mark, pursuant to 15 U.S.C. § 1121(a), as well as 28 U.S.C. § 1331 (Federal Question Jurisdiction); 28 U.S.C. § 1337(a) (Commerce Regulations); and 28 U.S.C. § 1338(b) (Trademark and Unfair Competition).

7.     This Court has jurisdiction of all pendant state law claims pursuant to 28 U.S.C. § 1367(a) (Supplemental Jurisdiction) because all such claims are based upon the same or substantially the same conduct by Defendant.

8.     This Court also has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332 because the parties are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.     Defendant is subject to personal jurisdiction of this Court as he has committed acts that have caused tortious injury in this Judicial District and has registered his infringing Marks in the Commonwealth of Pennsylvania and in this

district and is marketing his goods and services to fans of Penn State, most primarily therefore to consumers of this district.

10.    The Middle District of Pennsylvania is the proper venue for this action pursuant to 28 U.S.C. § 1391(b).

### Penn State's Protected Trademarks

11.    Penn State is the flagship public university of the Commonwealth of Pennsylvania.

12.    Penn State was founded in 1855 and began operating under the name "The Pennsylvania State University" in 1953.

13.    Penn State provides educational services, research, development and other related scholarly pursuits at multiple locations, within the Commonwealth of Pennsylvania, internationally, and online.  Since 1855, Penn State has grown to 24 campuses, 17,000 faculty and staff members, and over 100,000 students.

14.    Penn State is incredibly famous throughout the United States and the world for, among other things, its educational programs, athletics programs and services, and various and diverse student related services, as well as many goods and services related to the university.  Penn State's athletic programs are often televised to national and sometimes international audiences, and Penn State enjoys a large fan base throughout the country that is loyal to the University and its brand.

15.     In conjunction with its educational services, research, development, other related scholarly pursuits, as well as athletics and other student related services, Penn State uses extensively in interstate commerce several valuable and unique marks, specifically including the following marks: PENN STATE and NITTANY LIONS.

## The PENN STATE Family of Marks

16.     Penn State has been using PENN STATE as a word and design mark continuously since 1908 for many goods and services.  Since then, Penn State has developed a family of PENN STATE-formative word and design marks that it uses in connection with its goods and services (collectively, "The PENN STATE Family of Marks").  The common feature of each member of The PENN STATE Family of Marks is the use of the formative PENN STATE Mark.

17.     Marks in The PENN STATE Family of Marks are used in interstate commerce as a trademark and service mark, which designates Penn State as the source, provider, licensor, or sponsor of goods or services to which the mark is attached.

18.     Penn State has extensively promoted PENN STATE and The PENN STATE Family of Marks for more than four decades.  As a result, PENN STATE is famous and instantly recognizable to the consuming public of the United States and became famous long before the events complained about in this Complaint.

19.    To protect its valuable marks, Penn State has obtained numerous registrations for PENN STATE and The PENN STATE Family of Marks, in the United States and around the world.

20.    Penn State owns U.S. Registration No. 1,732,445 for the word mark PENNSTATE 1855 and the following design mark:



This registration covers a large number of goods and services, including, *inter alia*, "hotel and restaurant services and providing facilities for meetings, banquets and receptions; … and providing sleeping, eating, and meeting accommodations for the public" in International Class 42, with a first use date listed as March 1987; "cigarette lighters and ash-trays" in International Class 34, with a first use date of August 1989; "shirts, t-shirts, sweat shirts, jackets" in International Class 25, with a first use date listed as June 1987; and "drinking glasses, ceramic mugs, drinking mugs, cups, tankards, salt and pepper shakers, vases, dishes, ceramic covered dishes, plastic insulated sleeves to maintain the temperature of chilled beverages; … ceramic bells, insulated bottles, and glass candle holders with candles sold as a unit" in International Class 21, with a first use date listed as August 1987.  This registration was granted on November 17, 1992, is valid and subsisting on the Principal Register,

and is incontestable pursuant to 15 U.S.C. § 1065.  This registration is *prima facie* evidence of the validity of the mark, and of Penn State's exclusive right to use the PENNSTATE 1855 word and design mark.

21.    Penn State owns U.S. Registration No. 1,308,610 for PENN STATE, which covers a variety of goods in multiple classes, including without limitation, *inter alia*, "drinking mugs, tankards, glasses, cups, and tumblers" in International Class 21, with a first use in commerce going back at least as early as 1977; "cigarette lighters and matches" in International Class 34, with a first use date listed as 1976; and "nightshirts, shirts, t-shirts, jerseys, sweat shirts, vests" in International Class 25, with a first use date going back at least as early as June 1964.  This registration was granted on December 11, 1984, is valid and subsisting on the Principal Register, and is incontestable pursuant to 15 U.S.C. § 1065.  This registration is *prima facie* evidence of the validity of the mark, and of Penn State's exclusive right to use the PENN STATE word mark.

22.    Penn State owns U.S. Registration No. 4,439,041 for the word mark PENN STATE, which covers International Class 30, including without limitation "candy mints; chocolate candies; mustard; salsa," with a first use date listed as August 1996.  This registration was granted on November 26, 2013, and is valid and subsisting on the Principal Register.

23.     Penn State owns U.S. Registration No. 5,393,863 for the word mark PENNSTATE and the following design mark:



This registration covers various "educational services", "entertainment services", and "providing athletic instruction and coaching" in International Class 41, with a first use date listed as August 24, 2015.  This registration was granted on November 26, 2013, and is valid and subsisting on the Principal Register.

24.     Penn State owns U.S. Registration No. 5,441,650 for the word mark PENN STATE, which covers International Class 30, including without limitation "pretzels," with a first use date listed as June 30, 2013.  This registration was granted on April 10, 2018, and is valid and subsisting on the Principal Register.

25.     Penn State owns U.S. Registration No. 5,766,698 for the word mark PENN STATE, which covers numerous goods, including *inter alia*, "bottle openers, flasks, coasters, not of paper or textile, ceramic mugs, utensils for barbecues, namely forks, tongs, turners, drinking glasses, and cutting boards," in International Class 21 with a first use date listed as September 30, 1982; and for "t-shirts for infants and children, infant wear, cardigans, tennis shirts, hooded sweatshirts" in International

Class 25, with a first use date listed as September 30, 1982.  This registration was granted on June 4, 2019, and is valid and subsisting on the Principal Register.

26.     PENN STATE and The PENN STATE FAMILY of Marks are clearly famous worldwide regardless of the goods and services in each of the specific various registrations listed above.

27.     True and correct copies of the registration certificates for Penn State's registrations for The PENN STATE Family of Marks are attached as **Exhibit A**.

28.     To protect its famous and important PENN STATE Family of Marks, Penn State actively polices for infringing and dilutive uses of the PENN STATE Mark.

29.     Penn State's PENN STATE Mark and the various members of its PENN STATE Family of Marks are inherently distinctive.  Alternatively, as a result of Penn State's longstanding use and promotion of The PENN STATE Family of Marks, these marks have acquired secondary meaning (and have actually become famous under the law), becoming widely recognized by the general consuming public and trade as designations identifying Penn State and its goods and services.

**The NITTANY LIONS Marks**

30.     In addition, Penn State adopted a mascot called the "Nittany Lion" at least as early as 1984 for many purposes, including related to Penn State's many sports teams and sporting events, as well as goods and services related to those

9

events.  Penn State has been using the mark NITTANY LIONS as well as various design marks incorporating images of the Nittany Lion (collectively, "the NITTANY LIONS Marks") continuously since 1984 and for many goods and services, for decades more than that.

31.    The NITTANY LIONS Marks are used in interstate commerce as a trademark and service mark which designates Penn State as the source, provider, licensor, or sponsor of goods or services to which the marks are attached.

32.    Penn State has extensively promoted the NITTANY LIONS Marks for more than three decades.  As a result, NITTANY LIONS Marks are famous and instantly recognizable to the consuming public of at least the United States and became famous long before the events complained about in this Complaint.

33.    To protect its valuable marks, Penn State has obtained numerous registrations for the NITTANY LIONS Marks, in the United States and around the world.

34.    Penn State owns U.S. Registration No. 1,258,906 for the word mark THE NITTANY LION INN, which covers International Class 41, including without limitation for "providing sports and recreational facilities," and in International Class 42, including without limitation "hotel and restaurant services and providing facilities for meetings, banquets, and receptions," both with first use dates listed as 1948.  This registration was granted on November 22, 1983, is valid and subsisting

on the Principal Register, and is incontestable pursuant to 15 U.S.C. § 1065. This registration is *prima facie* evidence of the validity of the mark, and of Penn State's exclusive right to use the NITTANY LION INN mark.

35.     Penn State owns U.S. Registration No. 1,325,426 for the word mark NITTANY LIONS, which covers a large number of goods and services, such as International Class 21, including without limitation *inter alia*, "drinking mugs and cups, water pitchers," with a first use date listed as 1973; International Class 16, including without limitation "decals and stickers," with a first use date listed as 1973; "cigarette lighters" in International Class 34 with a first use date listed as 1976; and International Class 25, including without limitation "shirts, t-shirts, sweat shirts, ponchos, raincoats, [and] jerseys," with a first use date listed as 1973. This registration was granted on March 19, 1985, is valid and subsisting on the Principal Register, and is incontestable pursuant to 15 U.S.C. § 1065. This registration is *prima facie* evidence of the validity of the mark, and of Penn State's exclusive right to use the NITTANY LIONS word mark.

36.     Penn State owns U.S. Registration No. 4,431,101 for the word mark NITTANYVILLE, which covers t-shirts in International Class 25. This registration was granted on November 12, 2013, and is valid and subsisting on the Principal Register.

11

37.    Penn State owns U.S. Registration No. 4,830,175 for the word mark NITTANY NATION, which covers shirts and t-shirts in International Class 25, and International Class 41, including without limitation "entertainment services, namely, intercollegiate football games." This registration was granted on October 13, 2015, and is valid and subsisting on the Principal Register.

38.    Penn State owns U.S. Registration No. 5,480,198 for the word mark NITTANY LIONS, which covers a large variety of goods and services, including, *inter alia*, "plates, tumblers, drinking glasses" in International Class 21, and "children's and infants cloth bibs, t-shirts for infants and children, infant wear, sweaters, cardigans, jackets, nightshirts, hooded sweatshirts, sweatshirts" in International Class 25. This registration was granted on May 29, 2018, and is valid and subsisting on the Principal Register.

39.    Penn State also owns a significant number of federal registrations for images that represent its Nittany Lion mascot. Those registrations include:  U.S. Registration Nos. 1350286, 1370866, 1397810, 4406486, 5158810, 5204747, 5323000, 5323786, 5393863, 5539018, 5548988. The registrations cover a variety of goods and services, including several that specifically cover alcohol- and drinking-related goods, apparel, and smoking-related goods like cigarette lighters.

40.    True and correct copies of the certificates of registrations for Penn State's NITTANY LIONS registrations are attached as **Exhibit B**.

41.     To protect its famous and important NITTANY LIONS Marks, Penn State actively polices for infringing and dilutive uses of the NITTANY LIONS Marks.

42.     Penn State's NITTANY LIONS Marks are inherently distinctive. Alternatively, as a result of Penn State's longstanding use and promotion of the NITTANY LIONS Marks, these marks have acquired secondary meaning, becoming widely recognized by the general consuming public and trade as designations identifying Penn State and its goods and services.

**Defendant's Willful Infringement and Dilution of Penn State's Marks**

43.     Defendant Paul Parshall operates a business known as Sports Beer Brewing Company.  It does not appear that this company is a separately incorporated or organized business, but is just a d/b/a of Mr. Parshall.

44.     Through Sports Beer Brewing Company, Defendant promotes, advertises, offers, and sells beer, including bottles of beer, cigars, and t-shirts, including through the website located at the domain <sportsbeerbrewing.com> (the "Domain").

45.     Defendant advertises itself as "an intellectual property holding company consisting of a portfolio of sports trademarks, registrations and service marks for sports teams through out [sic] the United States."  (See **Exhibit C**, a screenshot of the Domain's "About Us" page).

13

46.     As detailed below, Defendant has been using a number of trademarks in connection with its goods that incorporate The PENN STATE Family of Marks and the NITTANY LIONS Marks, including:   PENN STATE NITTANY BREWING, PENN STATE NITTANY BEER, and PENN STATE NITTANY LION CIGARS (collectively, the "Infringing PENN STATE NITTANY Marks.")

47.     Through the Domain's "About Us" page, Defendant falsely represents that he is properly using the marks belonging to Penn State and many other extremely famous entities, by assuring customers, potential customers, and trade professionals:   "We have developed and obtained trademark, service marks and name registrations for Sports Teams all over the Country complying with Secretary of State regulations."   On this same webpage, Defendant lists PENN STATE NITTANY BREWING and PENN STATE NITTANY BEER among its "Featured Trademarks."  (See Exhibit C).

48.     The Domain's subpage "Claim Your Brand!", which is located at URL <www.sportsbeerbrewing.com/claim-your-brand-.html>, lists the names of many professional sports teams and well-known universities, and offers to sell "bottles and cans" of beer using those teams and entities, including those teams' and entities' famous marks.  (See **Exhibit D**).

49.     Included on the list of teams under the "Claim Your Brand!" subpage are the Infringing PENN STATE NITTANY Marks.

14

50.    The Domain's Subpage titled "Sports Beer Clothing", which is located at the URL < http://www.sportsbeerbrewing.com/sports-beer-clothing.html>, offers to sell t-shirts that apply an unlimited number of team names.  The webpage reads: "Pick your Team…Pick your colors.  We offer any of the team trademarks as shown on SportsBeerBrewing.com."  (See **Exhibit E**).

51.    Upon information and belief, Defendant is offering, advertising, and promoting the sale of t-shirts bearing the Infringing PENN STATE NITTANY Marks.

52.    Defendant surreptitiously filed to register two trademarks with the Pennsylvania Department of State, Bureau of Corporations and Charitable Organizations, on August 11, 2016, for the marks PENN STATE NITTANY BEER (Registration No. 6450052) and PENN STATE NITTANY BREWING CO (Registration No. 6445173), both in connection with "beer."  On those applications, Defendant claimed to have been using each mark since January 20, 2016, and to have used them within the Commonwealth of Pennsylvania since January 27, 2016. (Defendant's application to register PENN STATE NITTANY BEER is attached at pages 2-4 of **Exhibit F**.  Defendant's application to register PENN STATE NITTANY BREWING CO is attached at **Exhibit G**.)

53.    As part of its applications to obtain Pennsylvania registrations for PENN STATE NITTANY BEER and for PENN STATE NITTANY BREWING CO, Defendant submitted the following image of a specimen:



54.    As part of its applications for each of the Pennsylvania registrations, Defendant attested:  "Applicant is the owner of the mark, the mark is in use and, to the applicant's knowledge, **no other person has registered, either federally or in this Commonwealth or has the right to use such mark**, either in the identical form thereof or in such near resemblance thereto as to be likely, when applied to the goods or services of such other person, to cause confusion or to cause mistake, or to deceive" (emphasis added).

55.     The Domain's Subpage titled "Sports Team Cigars", which is located at the URL <http://www.sportsbeerbrewing.com/sports-team-cigars.html>, offers to sell cigars that apply team names.  (See Exhibit E).

56.     On May 20, 2019, Defendant registered the word mark PENN STATE NITTANY LION CIGARS on the Illinois state trademark system (Registration No. 113080), for use with "smoking products".  Defendant's Illinois registration is attached as **Exhibit H**.

57.     Defendant's Illinois registration for PENN STATE NITTANY LION CIGARS states that Defendant has been using the mark in Illinois since January 2, 2019.

58.     Upon information and belief, Defendant is currently advertising, offering to sell, and selling cigars with the infringing PENN STATE NITTANY LION CIGARS mark.

59.     Given Defendant's clear business model, at the time Defendant applied for the Pennsylvania and Illinois trademark registrations (as well as any other state registrations Defendant may have applied for that incorporate the Infringing PENN STATE NITTANY Marks or derivatives thereof), Defendant was aware of Penn State's famous PENN STATE Family of Marks and famous NITTANY LIONS Marks, Defendant knew that his use of PENN STATE NITTANY BEER and PENN STATE NITTANY BREWING CO would likely cause confusion with Penn State's

trademarks, and Defendant's intent was to trade off of Penn State's goodwill and reputation.

60.    State trademark registrations, including trademark registrations in the Commonwealth of Pennsylvania and in Illinois, are not like federal registrations. For instance, Pennsylvania registration applications are merely submitted to the Bureau of Corporations and Charitable Organizations with a very small filing fee, and the process is essentially done.  54 Pa. C.S.A. §§ 1112-1113.  There is no formal search process with rejections for infringement or likelihood of confusion with existing state or federal marks, and there is no public publication and response period so that affected businesses can challenge the state registration.

61.    Because of the nature of state trademark registrations, there was no process by which Penn State would have been publically notified of Defendant's state registrations.  Nor was there a process to challenge the registrations.

62.    Despite the typical nature of the state registration process, Defendant Parshall's infringement was so blatant that, upon seeing Defendant's state registration for PENN STATE NITTANY BEER, the Governor's Office of General Counsel for the Commonwealth of Pennsylvania contacted Penn State to make Penn State aware of the infringement.

63.    On March 6, 2018, Penn State received a February 27, 2018 correspondence from the Commonwealth of Pennsylvania's Governor's Office of

General Counsel, pointing out that Defendant's registration for PENN STATE NITTANY BEER "resembles trade names used by your organization in this Commonwealth" and warning Penn State that "Mr. Parshall may be attempting to cause confusion or mistake or to deceive in registering these marks."  A true and correct copy of this correspondence is attached as **Exhibit F**.

64.    While Defendant's Pennsylvania and Illinois registrations are noted herein, upon information and belief, Defendant may have registered or attempted to register additional trademarks with other states that incorporate the Infringing PENN STATE NITTANY Marks, or that otherwise infringe upon The PENN STATE Family of Marks and/or the NITTANY LIONS Marks.

65.    Upon information and belief, Defendant has repeatedly obtained state trademark registrations for marks that are confusingly similar to those owned by many famous college and professional sports teams, with the goal of registering marks that would likely mislead the trade and the consuming public into believing that Defendant's goods are affiliated with, licensed by, or sponsored by those colleges or professional sports organizations.

66.    At least one other entity whose trademarks are being misappropriated by Defendant has instituted legal action to enjoin Defendant from using their valuable marks.

67.    For example, Purdue University filed suit in Indiana State Court, and was awarded a preliminary injunction on November 9, 2017, enjoining Defendant from using or offering or licensing Purdue's marks for *any* commercial purpose, ordering that Defendant discontinue all use of Purdue's marks on the Domain, and otherwise enjoining Defendant from engaging in conduct that would cause consumers to erroneously associate Defendant's goods and services with Purdue.  A true and correct copy of the Preliminary Injunction order in that case (Cause No. 79D01-1702-PL-000011) is attached as **<u>Exhibit I</u>**.

68.    Regarding Purdue, despite the Preliminary Injunction Order, just recently on May 9, 2019, Mr. Parshall attempted to apply for a federal registration on the term PURDUE BOILERMAKERS BEER (Application Ser. No. 88/417,607).

69.    Although the Preliminary Injunction was granted in 2017 on an almost identical case, that has not stopped Defendant from trying to confuse the public regarding Penn State's Marks or others.

70.    Defendant has tried the tactic of federal registrations a few times before, each time having to abandon the application, usually after the United States Patent and Trademark Office notices the obvious infringement.  Examples of this include Defendant's federal applications for NASCAR BEER (Application Ser. No. 87/579,383), DALLAS COWBOYS BEER (Application Ser. No. 87/586,481), and Budweiser's famous KING OF BEERS (Application Ser. No. 86/814,661).

71.    Penn State has not—at any time, or for any purpose—authorized Defendant's use, either directly or indirectly, of its valuable PENN STATE Family of Marks or NITTANY LIONS Marks.

72.    Penn State sent Defendant a cease and desist letter dated June 14, 2018, notifying Defendant that its use of Penn State's protected trademarks infringed on Penn State's trademark rights, and demanded that Defendant immediately cease all use of the Infringing PENN STATE NITTANY Marks, and provide written assurance that it would abandon its Pennsylvania trademark registration for PENN STATE NITTANY BEER.

73.    Defendant responded on June 15, 2018, stating:  "in checking your TM with the uspto the name penn state nittany beer is available for filing with the uspto..i always do my home work before i file . i have been doing TM for over 50 yrs.": penn state" has never used the name beer in any of their filings with the state or feds . this holds true for "nittany".i would be willing to work with you and the university."

74.    Despite a further response from Penn State that Defendant's use of the Infringing PENN STATE NITTANY Marks was likely to cause consumer confusion and was unauthorized and unlawful, Defendant refused to stop using those marks.

75.    Penn State also sent Defendant a cease and desist letter on June 7, 2019, again demanding that Defendant stop all use of the Infringing PENN STATE NITTANY Marks, as well as to destroy any remaining labels, products, or printed

materials, and provide Penn State with an accounting of goods sold under the Infringing PENN STATE NITTANY Marks. Defendant refused to comply with any of Penn State's demands, and he continues to use those infringing marks.

76. In fact, Defendant's response was to ask to be bought out and to essentially sell Penn State's Marks back to Penn State.

77. Upon information and belief, Defendant is also pursuing agreements with distributors in Pennsylvania to assist with selling and distributing goods under the Infringing PENN STATE NITTANY Marks.

78. Defendant's egregious misuse of the Infringing PENN STATE NITTANY Marks has caused, or is likely to cause, great and irreparable injury to Penn State, including irreparable injury to the goodwill and reputation embodied in those marks, for which Penn State has no adequate remedy at law.

79. Upon information and belief, Defendant will continue to commit the acts complained of unless enjoined.

80. Upon information and belief, Defendant's acts were deliberately and intentionally carried out in bad faith, or with a reckless disregard for or willful blindness to Penn State's rights in The PENN STATE Family of Marks and the NITTANY LIONS Marks, for the purpose of trading on Penn State's reputation embodied in those marks and diluting those marks.

81.    The willful nature of Defendant's unlawful acts renders this an "exceptional case," entitled Penn State to an award of profits, treble damages, and attorneys' fees under at least 15 U.S.C. § 1117(a).

## COUNT I
## Federal Trademark Infringement under the Lanham Act (15 U.S.C. § 1114)
### (The PENN STATE Family of Marks)

82.    Plaintiff Penn State hereby incorporates by reference paragraphs 1-81 as though expressly stated herein.

83.    Defendant is using the Infringing PENN STATE NITTANY Marks, which include reproductions, counterfeits, copies, or colorable imitations of Penn State's PENN STATE Family of Marks, in commerce in connection with the sale, offering for sale, distribution, and/or advertising of goods and services including beer and t-shirts, that do not originate with and are not sponsored by or affiliated with Penn State.

84.    Defendant is applying the Infringing PENN STATE NITTANY Marks, which include reproductions, counterfeits, copies, or colorable imitations of Penn State's PENN STATE Family of Marks, in advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods including beer and t-shirts that do not originate with, and are not sponsored by or affiliated with, Penn State.

85.     Defendant's actions, including without limitation by selling goods and services in trademark classes registered by Penn State or within the natural zone of expansion of those classes and the goods and services within, are likely to cause confusion, mistake, or deception as to the source of origin of the goods offered by Defendant in connection with the Infringing PENN STATE NITTANY Marks, in that customers and potential customers are likely to believe that those goods offered by Defendant in connection with a reproduction, counterfeit, copy, or colorable imitation of Penn State's registered PENN STATE Family of Marks are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Penn State.

86.     Defendant's actions are likely to cause confusion, mistake, or deception, in that customers and potential customers are likely to believe there is sponsorship, approval, licensing, affiliation, association, or some legitimate connection between the goods provided by Defendant in connection with the Infringing PENN STATE NITTANY Marks and Penn State, when there is no such relationship.

87.     As a direct and proximate result of the likely confusion, mistake, or deception, Penn State has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

88.     The likely confusion, mistake, or deception caused by Defendant is willful and is in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT II
## Federal Trademark Infringement under the Lanham Act (15 U.S.C. § 1114)
### (NITTANY LIONS Marks)

89.     Plaintiff Penn State hereby incorporates by reference paragraphs 1-88 as though expressly stated herein.

90.     Defendant is using the Infringing PENN STATE NITTANY Marks, which include reproductions, counterfeits, copies, or colorable imitations of Penn State's NITTANY LIONS Marks, in commerce in connection with the sale, offering for sale, distribution, and/or advertising of goods and services including at least beer and t-shirts, that do not originate with and are not sponsored by or affiliated with Penn State.

91.     Defendant is applying the Infringing PENN STATE NITTANY Marks, which include reproductions, counterfeits, copies, or colorable imitations of Penn State's NITTANY LIONS Marks in advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods including beer and t-shirts that do not originate with, and are not sponsored by or affiliated with, Penn State.

92.     Defendant's actions, including without limitation by selling goods and services in trademark classes registered by Penn State or within the natural zone of

expansion of those classes and the goods and services within, are likely to cause confusion, mistake, or deception as to the source of origin of the goods offered by Defendant in connection with the Infringing PENN STATE NITTANY Marks, in that customers and potential customers are likely to believe that those goods offered by Defendant in connection with a reproduction, counterfeit, copy, or colorable imitation of Penn State's registered NITTANY LIONS Marks are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Penn State.

93.    Defendant's actions are likely to cause confusion, mistake, or deception, in that customers and potential customers are likely to believe there is sponsorship, approval, licensing, affiliation, association, or some legitimate connection between the goods provided by Defendant in connection with the Infringing PENN STATE NITTANY Marks and Penn State, when there is no such relationship.

94.    As a direct and proximate result of the likely confusion, mistake, or deception, Penn State has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

95.    The likely confusion, mistake, or deception caused by Defendant is willful and is in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT III
## **Federal Unfair Competition and False Designation of Origin**
### (The PENN STATE Family of Marks)

96.     Plaintiff Penn State hereby incorporates by reference paragraphs 1-95 as though expressly stated herein.

97.     Defendant's actions constitute use of terms, names, symbols, and devices, and use of false designations of origin, all of which are likely to cause confusion, mistake, or deception as to the source of origin of the goods provided by Defendant, in that customers and potential customers are likely to believe that such goods are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Penn State.

98.     Defendant's actions are likely to cause confusion, mistake, or deception, in that customers and potential customers are likely to believe there is sponsorship, approval, licensing, affiliation, association, or some legitimate connection between the goods provided by Defendant in connection with the Infringing PENN STATE NITTANY Marks and Penn State, when there is no such relationship.

99.     As a direct and proximate result of the likely confusion, mistake, or deception, Penn State has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

100.    The likely confusion, mistake, or deception caused by Defendant is willful and is in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT IV
## Federal Unfair Competition and False Designation of Origin
### (NITTANY LIONS Marks)

101.    Plaintiff Penn State hereby incorporates by reference paragraphs 1-100 as though expressly stated herein.

102.    Defendant's actions constitute use of terms, names, symbols, and devices, and use of false designations of origin, all of which are likely to cause confusion, mistake, or deception as to the source of origin of the goods provided by Defendant, in that customers and potential customers are likely to believe that such goods are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Penn State.

103.    Defendant's actions are likely to cause confusion, mistake, or deception, in that customers and potential customers are likely to believe there is sponsorship, approval, licensing, affiliation, association, or some legitimate connection between the goods (including beer and t-shirts) provided by Defendant in connection with the Infringing PENN STATE NITTANY Marks and Penn State, when there is no such relationship.

104.   As a direct and proximate result of the likely confusion, mistake, or deception, Penn State has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

105.   The likely confusion, mistake, or deception caused by Defendant is willful and is in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT V
## Federal Trademark Dilution – 15 U.S.C. § 1125(c)
### (Dilution of The PENN STATE Family of Marks)

106.   Plaintiff Penn State hereby incorporates by reference paragraphs 1-105 as though expressly stated herein.

107.   The PENN STATE Family of Marks are famous trademarks within the meaning of 15 U.S.C. § 1125(c), and became famous before Defendant began using the Infringing PENN STATE NITTANY Marks in connection with its goods.  The PENN STATE Family of Marks is advertised and used extensively throughout the United States, and is highly recognized by the trade and consuming public.  Further, Penn State actively polices the use of those Marks by third parties.

108.   Defendant is engaged in commercial use of the Infringing PENN STATE NITTANY Marks.

109.   Defendant's actions are disparaging and damaging, and are likely to cause dilution of The PENN STATE Family of Marks through, at the very least, blurring and tarnishing.

110.   Defendant's actions are likely to dilute by blurring The PENN STATE Family of Marks by impairing the distinctiveness of those Marks.

111.   Defendant's actions are likely to dilute by tarnishing The PENN STATE Family of Marks by, at least, using the Infringing PENN STATE NITTANY Marks to sell goods that do not live up to the high standards set for goods and services offered under The PENN STATE Family of Marks.

112.   As a result of Defendant's likely dilution, Penn State has suffered, and will continue to suffer, irreparable injury and substantial damages, while Defendant has been and will continue to be unjustly enriched.

113.   Upon information and belief, Defendant's dilution of The PENN STATE Family of Marks is and was willful.

114.   The likely dilution of The PENN STATE Family of Marks caused by Defendant violates section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

**COUNT VI**
**Federal Trademark Dilution – 15 U.S.C. § 1125(c)**
**(Dilution of the NITTANY LIONS Marks)**

115.   Plaintiff Penn State hereby incorporates by reference paragraphs 1-114 as though expressly stated herein.

116.   The NITTANY LIONS Marks are famous trademarks within the meaning of 15 U.S.C. § 1125(c), and became famous well before Defendant began using the Infringing PENN STATE NITTANY Marks in connection with its goods.

30

The NITTANY LIONS Marks are advertised and used extensively throughout the United States, and are highly recognized by the trade and consuming public. Further, Penn State actively polices the use of those Marks by third parties.

117. Defendant is engaged in commercial use of the Infringing PENN STATE NITTANY Marks.

118. Defendant's actions are disparaging and damaging, and are likely to cause dilution of the NITTANY LIONS Marks through, at the very least, blurring and tarnishing.

119. Defendant's actions are likely to dilute by blurring the NITTANY LIONS Marks by impairing the distinctiveness of those Marks.

120. Defendant's actions are likely to dilute by tarnishing the NITTANY LIONS Marks by, at least, using the Infringing PENN STATE NITTANY Mark to sell goods that do not live up to the high standards set for goods and services offered under the NITTANY LIONS Marks.

121. As a result of Defendant's likely dilution, Penn State has suffered, and will continue to suffer, irreparable injury and substantial damages, while Defendant has been and will continue to be unjustly enriched.

122. Upon information and belief, Defendant's dilution of the NITTANY LIONS Marks is and was willful.

123.   The likely dilution of the NITTANY LIONS Marks caused by Defendant violates section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

**COUNT VII**
**Trademark Counterfeiting Under 15 U.S.C. §§ 1114**
**(The PENN STATE Family of Marks)**

124.   Plaintiff Penn State hereby incorporates by reference paragraphs 1-123 as though expressly stated herein.

125.   Defendant has used the Infringing PENN STATE NITTANY Marks as spurious designations that are identical with, or substantially indistinguishable from The PENN STATE Family of Marks on goods covered by Penn State's federal registrations for those marks.

126.   Defendant has used those spurious designations knowing that they are counterfeit in connection with the advertisement, promotion, sale, offering for sale, and distribution of goods and services, including at least beer and t-shirts.

127.   Defendant's use of the Infringing PENN STATE NITTANY Marks to advertise, promote, offer for sale, distribute, and sell goods and services, including at least beer and t-shirts, was and is without the consent of Plaintiff Penn State.

128.   Defendant's use of the Infringing PENN STATE NITTANY Marks to advertise, promote, offer for sale, distribute, and sell goods and services, including at least beer and t-shirts, constitutes use of those marks in commerce.

129.   Defendant's unauthorized use of the Infringing PENN STATE NITTANY Marks is likely to: (i) cause confusion, mistake, and deception; (ii) cause the public to believe that Defendant's goods and services are authorized, sponsored, or approved by Penn State, or that Defendant is affiliated, connected, or associated with or in some way related to Penn State; and (iii) result in Defendant unfairly benefiting from Penn State's advertising and promotion, and profiting from the reputation of Penn State and its PENN STATE Family of Marks and NITTANY LIONS Marks, all to the substantial and irreparable injury of the public.

130.   Defendant's acts constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

131.   Defendant's acts are both willful and malicious.

132.   By reason of the foregoing, Defendant is liable to Penn State for:

a.   statutory damages in the amount of up to $2,000,000 for each mark counterfeited as well as for each type of good or service sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(c) of the Lanham Act; or, at Penn State's election, an amount representing three (3) times Penn State's damages or Defendant's illicit profits; and

b.   reasonable attorney's fees, investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117(b).

133.   Defendant's willful and deliberate acts described above have caused injury and damages to Penn State, and have caused irreparable injury to Penn State's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Penn State has no adequate remedy at law.

## COUNT VIII
## Trademark Counterfeiting Under 15 U.S.C. §§ 1114
### (The NITTANY LIONS Marks)

134.   Plaintiff Penn State hereby incorporates by reference paragraphs 1-133 as though expressly stated herein.

135.   Defendant has used the Infringing PENN STATE NITTANY Marks as spurious designations that are identical with, or substantially indistinguishable from the NITTANY LIONS Marks on goods covered by Penn State's federal registrations for those marks.

136.   Defendant has used those spurious designations knowing that they are counterfeit in connection with the advertisement, promotion, sale, offering for sale, and distribution of goods and services, including at least beer and t-shirts.

137.   Defendant's use of the Infringing PENN STATE NITTANY Marks to advertise, promote, offer for sale, distribute, and sell goods and services, including at least beer and t-shirts, was and is without the consent of Plaintiff Penn State.

138.   Defendant's use of the Infringing PENN STATE NITTANY Marks to advertise, promote, offer for sale, distribute, and sell goods and services, including at least beer and t-shirts, constitutes use of those marks in commerce.

139.   Defendant's unauthorized use of the Infringing PENN STATE NITTANY Marks is likely to:  (i) cause confusion, mistake, and deception; (ii) cause the public to believe that Defendant's goods and services are authorized, sponsored, or approved by Penn State, or that Defendant is affiliated, connected, or associated with or in some way related to Penn State; and (iii) result in Defendant unfairly benefiting from Penn State's advertising and promotion, and profiting from the reputation of Penn State and its PENN STATE Family of Marks and NITTANY LIONS Marks, all to the substantial and irreparable injury of the public.

140.   Defendant's acts constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

141.   Defendant's acts are both willful and malicious.

142.   By reason of the foregoing, Defendant is liable to Penn State for:

a.     statutory damages in the amount of up to $2,000,000 for each mark counterfeited as well as for each type of good or service sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(c) of the Lanham Act; or, at Penn State's election, an amount representing three (3) times Penn State's damages or Defendant's illicit profits; and

b.     reasonable attorney's fees, investigative fees, and pre-judgment

interest pursuant to 15 U.S.C. § 1117(b).

143.   Defendant's willful and deliberate acts described above have caused

injury and damages to Penn State, and have caused irreparable injury to Penn State's

goodwill and reputation and, unless enjoined, will cause further irreparable injury,

whereby Penn State has no adequate remedy at law.

**COUNT IX**
**Trademark Dilution Under 54 Pa. C.S.A. § 1124**
**(The PENN STATE Family of Marks)**

144.   Plaintiff Penn State hereby incorporates by reference paragraphs 1-143

as though expressly stated herein.

145.   This claim is for dilution of trademarks and injury to business or

reputation under 54 Pa. C.S.A. § 1124.

146.   The PENN STATE Family of Marks are famous marks in the

Commonwealth of Pennsylvania within the meaning of 54 Pa. C.S.A. § 1124, and

were famous prior to the date of Defendant's adoption and use of the Infringing

PENN STATE NITTANY Marks.

147.   Defendant's conduct, as described in this Complaint, is diluting and

will dilute The PENN STATE Family of Marks, thereby lessening the capacity of

those Marks to identify and distinguish goods and services marketed and sold by

Penn State under those Marks.

148.   On information and belief, Defendant's acts of trademark dilution have been done willfully and deliberately, and Defendant has profited and been unjustly enriched by sales that Defendant would not otherwise have made but for its unlawful conduct.

149.   Defendant's acts described above have caused injury and damages to Penn State, and have caused irreparable harm to Penn State's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Penn State has no adequate remedy at law.

## COUNT X
## Trademark Dilution under 54 Pa. C.S.A. § 1124
### (The NITTANY LIONS Marks)

150.   Plaintiff Penn State hereby incorporates by reference paragraphs 1-149 as though expressly stated herein.

151.   This claim is for dilution of trademarks and injury to business or reputation under 54 Pa. C.S.A. § 1124.

152.   The NITTANY LIONS Marks are famous marks in the Commonwealth of Pennsylvania within the meaning of 54 Pa. C.S.A. § 1124, and were famous prior to the date of Defendant's adoption and use of the Infringing PENN STATE NITTANY Marks.

153.   Defendant's conduct, as described in this Complaint, is diluting and will dilute the NITTANY LIONS Marks, thereby lessening the capacity of those

Marks to identify and distinguish goods and services marketed and sold by Penn State under those Marks.

154.   On information and belief, Defendant's acts of trademark dilution have been done willfully and deliberately, and Defendant has profited and been unjustly enriched by sales that Defendant would not otherwise have made but for its unlawful conduct.

155.   Defendant's acts described above have caused injury and damages to Penn State, and have caused irreparable harm to Penn State's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Penn State has no adequate remedy at law.

**COUNT XI**
**Common Law Trademark Infringement and Unfair Competition**
**(The PENN STATE Family of Marks)**

156.   Plaintiff Penn State hereby incorporates by reference paragraphs 1-155 as though expressly stated herein.

157.   This cause of action arises under the Commonwealth of Pennsylvania's common law of trademark infringement and unfair competition.

158.   Defendant's use of the Infringing PENN STATE NITTANY Marks constitutes common law trademark infringement and unfair competition in violation of common law.

159.   On information and belief, Defendant's acts of common law trademark infringement and unfair competition have been done willfully and deliberately, and Defendant has profited and been unjustly enriched by sales that Defendant would not otherwise have made if not for its unlawful conduct.

160.   Defendant's willful and deliberate acts described above have caused injury and damages to Penn State, and have caused irreparable injury to Penn State's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Penn State has no adequate remedy at law.

## COUNT XII
## <u>Common Law Trademark Infringement and Unfair Competition</u>
## (The NITTANY LIONS Marks)

161.   Plaintiff Penn State hereby incorporates by reference paragraphs 1-160 as though expressly stated herein.

162.   This cause of action arises under the Commonwealth of Pennsylvania's common law of trademark infringement and unfair competition.

163.   Defendant's use of the Infringing PENN STATE NITTANY Marks constitutes common law trademark infringement and unfair competition in violation of common law.

164.   On information and belief, Defendant's acts of common law trademark infringement and unfair competition have been done willfully and deliberately, and

Defendant has profited and been unjustly enriched by sales that Defendant would not otherwise have made if not for its unlawful conduct.

165.   Defendant's willful and deliberate acts described above have caused injury and damages to Penn State, and have caused irreparable injury to Penn State's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Penn State has no adequate remedy at law.

**COUNT XIII**
**Cancellation of PENN STATE NITTANY BEER State Registration (No. 6450052) and PENN STATE NITTANY BREWING CO State Registration (No. 6445173) Under 54 Pa. C.S. § 1116 and the Lanham Act**

166.   Plaintiff Penn State hereby incorporates by reference paragraphs 1-165 as though expressly stated herein.

167.   Defendant obtained a Pennsylvania registration for the mark PENN STATE NITTANY BEER and for the mark PENN STATE NITTANY BREWING CO, each in connection with beer, on August 23, 2016 (Registration Nos. 6450052 and 6445173).

168.   Upon information and belief, Defendant improperly obtained those registrations by submitting false declarations to the Pennsylvania Department of State. Defendant Parshall, in his capacity as the representative for Defendant Sports Beer Brewing Company, stating that "to the applicant's knowledge, no other person has registered, either federally or in this Commonwealth or has the right to use such mark, either in the identical form thereof or in such near resemblance thereto as to

be likely, when applied to the goods or services of such other person, to cause confusion or to cause mistake, or to deceive."

169. Upon information and belief, Defendant knew of Penn State's rights in the famous PENN STATE Family of Marks and the famous NITTANY LIONS Marks, and knew that Defendant's use of PENN STATE NITTANY BEER and PENN STATE NITTANY BREWING CO would be likely to cause confusion or mistake, or to deceive consumers.

170. Upon information and belief, the reason that Defendant selected to apply to register the names PENN STATE NITTANY BEER and PENN STATE NITTANY BREWING CO in connection with its product was to misappropriate Penn State's goodwill and to purposely lead consumers and trade personnel to believe that Defendant's goods were associated with, sponsored by, or somehow affiliated with Penn State.

171. Defendant's Pennsylvania registrations for PENN STATE NITTANY BEER and for PENN STATE NITTANY BREWING CO are likely to cause confusion or mistake or to deceive because each of those registrations is so similar to The PENN STATE Family of Marks and the NITTANY LIONS Marks, which are protected by numerous federal registrations that predate Defendant's filing of the application to register PENN STATE NITTANY BEER and PENN STATE NITTANY BREWING CO with the Pennsylvania Bureau of Corporations.

172.   Defendant's Pennsylvania registrations for PENN STATE NITTANY BEER and PENN STATE NITTANY BREWING CO should be cancelled pursuant to 54 Pa. C.S.A. § 1116(a)(3)(ii), (iii), (iv), and (v) and the Lanham Act.

173.   Penn State is entitled to recover damages, pursuant to 54 Pa. C.S.A. § 1121, that it has incurred as a direct and proximate result of Defendant's fraudulent registrations of PENN STATE NITTANY BEER and PENN STATE NITTANY BREWING CO.

### COUNT XIV
### Cancellation of PENN STATE NITTANY LION CIGARS Illinois State Registration (No. 113080) Under 765 Ill. Comp. Stat. 1036/45 and the Lanham Act

174.   Plaintiff Penn State hereby incorporates by reference paragraphs 1-173 as though expressly stated herein.

175.   Defendant obtained an Illinois registration for the mark PENN STATE NITTANY LION CIGARS in connection with "smoking products" on May 20, 2019 (Registration No. 113080).

176.   Upon information and belief, Defendant improperly obtained that registration by submitting a false declaration to the Illinois Secretary of State, including: "a statement that the applicant is the owner of the mark, that the mark is in use, and that to the knowledge of the person verifying the application, no other person has registered the mark, either federally or in this State, or has the right to use the mark either in the identical form thereof or in such near resemblance thereto

as to be likely, when applied to the goods or services of such other person, to cause confusion, or to cause mistake, or to deceive" as required by 765 Ill. Comp. Stat. § 1036/15(e).

177.   Upon information and belief, Defendant knew of Penn State's rights in the famous PENN STATE Family of Marks and the famous NITTANY LIONS Marks, and knew that Defendant's use of PENN STATE NITTANY LION CIGARS would be likely to cause confusion or mistake, or to deceive consumers.

178.   Upon information and belief, the reason that Defendant selected to apply to register the name PENN STATE NITTANY LION CIGARS in connection with its product was to misappropriate Penn State's goodwill and to purposely lead consumers and trade personnel to believe that Defendant's goods were associated with, sponsored by, or somehow affiliated with Penn State.

179.   Defendant's Illinois registration for PENN STATE NITTANY LION CIGARS is likely to cause confusion or mistake or to deceive because that registration is so similar to The PENN STATE Family of Marks and the NITTANY LIONS Marks, which are protected by numerous federal registrations that predate Defendant's filing of the application to register PENN STATE NITTANY LION CIGARS with the Illinois Secretary of State.

180.   Defendant's Illinois registration for PENN STATE NITTANY LION CIGARS should be cancelled pursuant to 765 Ill. Comp. Stat. § 1036/45(c) and the Lanham Act.

**COUNT XV**
**Cancellation of any other State Registrations in Conflict with Penn State's Trademark Rights under the Lanham Act**

181.   Plaintiff Penn State hereby incorporates by reference paragraphs 1-180 as though expressly stated herein.

182.   Defendant's business model appears to be to surreptitiously obtain state registrations for famous marks of others, including the famous PENN STATE Family of Marks and the famous NITTANY LIONS Marks, and then claim those marks as his own.  Such actions are in conflict with Penn State's federal rights.

183.   Upon information and belief, Defendant may have registered or attempted to register infringing trademarks with state agencies in addition to those listed in this Complaint.

184.   Such registrations are likely to cause confusion or mistake or to deceive because each of those registrations is so similar to The PENN STATE Family of Marks and the NITTANY LIONS Marks, which are protected by numerous federal registrations that predate Defendant's filing of the application to register PENN STATE NITTANY BEER, PENN STATE NITTANY BREWING CO, PENN

STATE NITTANY LION CIGARS, or similarly confusing marks with state agencies.

185.   As such, those additional registrations should be cancelled pursuant to the Lanham Act as being in conflict with Penn State's preexisting federal marks.

186.   Penn State is entitled to recover damages that it has incurred as a direct and proximate result of Defendant's fraudulent registrations of PENN STATE NITTANY BEER and PENN STATE NITTANY BREWING CO or similarly confusing marks with state agencies.

## JURY DEMAND

Penn State respectfully requests a jury trial for this matter.

**WHEREFORE**, Penn State prays for judgment against Defendant as follows:

A.     Preliminarily and permanently enjoining and restraining Defendant, its directors, members, officers, agents, servants, employees, parents, subsidiaries, affiliates, and all persons in active concert or participation with, through, or under any of them, at first during the pendency of this action and thereafter perpetually:

   i.     from committing any acts of trademark infringement, trademark dilution, cybersquatting, unfair competition, and counterfeiting, and from implying a false designation of origin or a false description or representation with respect to The PENN STATE Family of Marks or the NITTANY LIONS Marks;

  ii.  from using in any manner packaging, labels, signs, literature, display cards, Internet website, or other packaging, advertising, or promotional materials, or other materials the Infringing PENN STATE NITTANY Marks or any other marks, words, or names that are confusingly similar to The PENN STATE Family of Marks or the NITTANY LIONS Marks;

  iii.  from making any statements on promotional materials or advertising for its goods or services that are false or misleading as to source or origin or affiliation with, sponsorship by, or connection to Penn State; and

  iv.  from using any designation that is likely to disparage, tarnish or dilute the distinctive quality of The PENN STATE Family of Marks or the NITTANY LIONS Marks;

B. Requiring that Defendant deliver up to Penn State any and all containers, signs, packaging materials, printing plates, and advertising or promotional materials and any materials used in the preparation thereof, which in any way unlawfully use or make reference to the Infringing PENN STATE NITTANY Marks, or any of Penn State's PENN STATE Family of Marks or Penn State's NITTANY LIONS Marks.

C.  Requiring that Defendant, within thirty (30) days after service of notice of entry of judgment or issuance of an injunction pursuant thereto, file with the Court and serve upon Penn State's counsel a written report under oath setting forth details of the manner in which Defendant has complied with the Court's order pursuant to paragraphs A through B above.

D.  Requiring Defendant to account and pay over to Penn State all damages sustained by Penn State as a result of Defendant's willful infringement and unfair competition, including Defendant's profits, Penn State's attorney's fees and costs, and ordering that the amount of damages awarded Penn State be increased three times the amount thereof pursuant to 15 U.S.C. §§ 1117(b) and 1125. Alternatively, that Penn State be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of up to $2,000,000 per each and every trademark that Defendant has willfully counterfeited and infringed, and per every type of good or service sold, offered for sale, or distributed on each such mark.

E.  Ordering that Penn State recover the costs of this action, together with reasonable attorney's fees and prejudgment interest in accordance with 15 U.S.C. § 1117.

F.  Ordering that Defendant's Pennsylvania registrations for PENN STATE NITTANY BEER (Registration No. 6450052) and PENN STATE NITTANY

BREWING CO (Registration No. 6445173) be cancelled pursuant to 54 Pa. C.S.A. § 1116(a)(3)(ii), (iii), (iv), and (v) and the Lanham Act, and that Defendant's Illinois registration for PENN STATE NITTANY LION CIGARS (Registration No. 113080) be cancelled pursuant to 765 Ill. Comp. Stat. 1036/45 and the Lanham Act.

G. Ordering that Defendant's additional state registrations for PENN STATE NITTANY BEER or PENN STATE NITTANY BREWING CO or PENN STATE NITTANY LION CIGARS or any similarly confusing marks be cancelled pursuant to the Lanham Act.

H. Ordering Defendant to withdraw any state trademark registrations or applications for state trademark registrations incorporating the Infringing PENN STATE NITTANY Marks to the extent that there are any state registrations that this Court cannot order for cancellation.

I. Awarding Penn State damages, pursuant to 54 Pa. C.S.A. § 1121, that it has incurred as a direct and proximate result of Defendant's fraudulent registrations of PENN STATE NITTANY BEER and PENN STATE NITTANY BREWING CO.

J. Awarding Penn State such other and further relief as this Court deems just and proper.

Dated this ___ day of July, 2019.

Respectfully submitted,

By: _____
Megan S. Haines, Esquire
Pa. I.D. No. 203590
McGuireWoods LLP
Tower Two Sixty – Suite 1800
260 Forbes Avenue
Pittsburgh, PA 15222
(412) 667-6000
(412) 667-6050
E-mail: mhaines@mcguirewoods.com

Brad R. Newberg
(*Pro hac vice* to be submitted)
McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
Tysons Corner, VA 22102
Tel: (703) 712-5061
Fax: (703) 712-5187
Email: bnewberg@mcguirewoods.com

Claire Hagan Eller
(*Pro hac vice* to be submitted)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1368
Fax: (804) 698-2130
Email: celler@mcguirewoods.com

*Attorneys for The Pennsylvania State University*